KENDALL BRILL & KELLY LLP
Philip M. Kelly (212174)
  *pkelly@kbkfirm.com*
Richard M. Simon (240530)
  *rsimon@kbkfirm.com*
10100 Santa Monica Blvd., Suite 1725
Los Angeles, California 90067
Telephone: 310.556.2700
Facsimile:  310.556.2705

Attorneys for Non-Party
Bellator Sport Worldwide, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re Subpoena Of<br><br>BELLATOR SPORT WORLDWIDE, LLC<br><br>_____<br><br>Underlying Matter<br><br>CUNG LE, NATHAN QUARRY and JOHN FITCH, *et al.*,<br><br>       Plaintiffs,<br><br>      v.<br><br>ZUFFA, LLC d/b/a ULTIMATE FIGHTING CHAMPIONSHIP and UFC,<br><br>       Defendant. | Case No. 2:17-mc-00016<br><br>[Underlying Case: USDC Case No. 2:15-cv-01045-RFB-(PAL) (D. Nev. 2015)]<br><br>**NON-PARTY BELLATOR SPORT WORLDWIDE, LLC'S NOTICE OF MOTION AND MOTION TO QUASH OR MODIFY SUBPOENAS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>*Filed concurrently with Declarations of Scott Coker and Phil Kelly; [Proposed] Order*<br><br>Judge:<br><br>Date:<br>Time: |

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

300944.1

Case No. 2:17-mc-00016

BELLATOR MOTION TO QUASH SUBPOENAS

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on March __ at _____, or as soon thereafter as the matter may be heard by the Honorable _____ of the United States District Court for the Central District of California, located at 350 West First Street, Los Angeles, California, Bellator Sport Worldwide, LLC ("Bellator") will and hereby does move the Court to for an order quashing or modifying two document subpoenas issued to it by the litigants in the matter *Cung Le et al. v. Zuffa, LLC d/b/a Ultimate Fighting Championship and UFC*, Case No. 2:15-cv-01045-RFB (D. Nev. 2015), which is pending in the United States District Court in the District of Nevada.

This Motion is made pursuant to Federal Rule of Civil Procedure 45(d)(3) upon the grounds that the plaintiffs' subpoena, including their document demands numbers 4 and 12, and the defendant's subpoena, including its document demands numbers 1, 7 & 12, each seek Bellator's confidential key contracts and financial information, and as such, the subpoenas improperly seek trade secret and other sensitive information protected from disclosure; they are overbroad and unduly burdensome; and this information cannot be adequately protected by the litigants' stipulated protective order.

Jurisdiction is proper in this Court pursuant to Federal Rule of Civil Procedure 45(c) upon the grounds that petitioner Bellator, a non-party to the underlying action in Nevada, is based in Los Angeles, California, and the place of compliance for the subpoenas is Los Angeles, California.

This Motion is based on this Notice, the attached Memorandum of Points and Authorities, the Declarations of Scott Coker and Phil Kelly filed concurrently

//
//
//
//

**Kendall Brill & Kelly LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

300944.1

1

Case No. 2:17-mc-00016

BELLATOR MOTION TO QUASH SUBPOENAS

1  herewith, all of the pleadings, files, and records on file in this proceeding, all other

2  matters of which the Court may take judicial notice, and such further written and

3  oral argument as may be presented to the Court.

4

5  DATED:  February 22, 2017          KENDALL BRILL & KELLY LLP

6

7

8                                        By:  _____

9                                             Philip M. Kelly
                                             Attorneys for Non-Party
10                                            Bellator Sport Worldwide, LLC

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Kendall Brill
& Kelly LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

300944.1                                2                         Case No. 2:17-mc-00016
                          BELLATOR MOTION TO QUASH SUBPOENAS

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................ 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ...................................... 3

    A.    Background of Bellator ...................................................... 3

    B.    Background to the Underlying Antitrust Litigation .............................. 3

    C.    Procedural History of the Bellator Subpoenas ................................ 5

          1.    Demands for Athlete Contracts and Negotiations ..................... 6

          2.    Demands for Cost and Revenue Information ......................... 7

    D.    Bellator's Internal Management of Sensitive Information ..................... 8

III.   JURISDICTION ............................................................. 10

IV.   ARGUMENT ................................................................ 10

    A.    The Subpoena Demands Should Be Quashed Because They Seek Confidential Commercial Information Without Substantial Need ....... 11

          1.    Contract Negotiations and Operating Financials Constitute Bellator's Confidential Commercial Information ..................... 11

          2.    Plaintiffs And UFC Cannot Demonstrate A Substantial Need For Bellator's Contract Negotiations and Operating Financials ..................................................... 14

    B.    The Subpoenas Must Be Quashed Or Limited Because They Are Overbroad And Unduly Burdensome .................................. 16

          1.    The Demands Seek Irrelevant Information and Subject Bellator to Undue Burden .................................... 16

          2.    Even if the Information Sought Were Relevant, the Demands Impose an Undue Burden and Should Be Quashed ................. 20

    C.    The Parties' Stipulated Protective Order Will Not Protect Bellator From Hardship And Undue Burden .......................... 20

          1.    Bellator Lacks Adequate Notice and Opportunity to Prevent Disclosure in Pre-Trial Litigation ..................... 21

          2.    Bellator Lacks Protection Against Disclosure of Its Confidential Information at Trial in Nevada ..................... 23

          3.    The Parties Have Demonstrated an Inability to Properly Maintain Confidentiality Documents ......................... 23

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

300944.1

1

V.     CONCLUSION ............................................................................................ 24

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Kendall Brill
& Kelly LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

300944.1                                                ii                                    Case No. 2:17-mc-00016
                                    BELLATOR MOTION TO QUASH SUBPOENAS

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

*Aevoe Corp. v. AE Tech Co.*,
   2013 WL 5954570 (D. Nev. Nov. 6, 2013)......................................................14

*Aevoe Corp. v. AE Tech. Co.*,
   2014 WL 551563 (D. Nev. February 7, 2014) .................................................22

*In re: Am. Med. Sys., Inc.*,
   2016 WL 3077904 (S.D. W.Va. May 31, 2016) .........................................11, 12

*Compaq Computer Corp. v. Packard Bell Elec., Inc.*,
   163 F.R.D. 329 (N.D. Cal. 1995) ....................................................................16

*Dart Indus. Co. v. Westwood Chem. Co.*,
   649 F.2d 646 (9th Cir. 1980) ...........................................................................10

*DIRECTV, Inc. v. Trone*,
   209 F.R.D. 455 (C.D. Cal. 2002)................................................11, 12, 13, 16

*Echostar Commn's Corp. v. News Corp. Ltd.*,
   180 F.R.D. 391 (D. Colo. 1998) .............................................................*passim*

*Edwards v. Cal. Dairies, Inc.*,
   2014 WL 2465934 (E.D. Cal. June 2, 2014) ...................................................12

*Exxon Shipping Co. v. U.S. Dep't of Interior*,
   34 F.3d 774 (9th Cir. 1994) .............................................................................10

*Fanjoy v. Calico Brands, Inc.*,
   2006 WL 2303115 (D. Utah August 8, 2006)..................................................14

*Gonzales v. Google, Inc.*,
   234 F.R.D. 674 (N.D. Cal. 2006) ........................................................14, 19, 20

*Mattel Inc. v. Walking Mountain Prods.*,
   353 F.3d 792 (9th Cir. 2003) ......................................................................10, 15

*Mgmt. and Eng'g Tech. Intern., Inc. v. Info. Sys. Support, Inc.*,
   490 Fed. Appx. 30 (9th Cir. 2012) ..................................................................12

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

300944.1                                              iii                            Case No. 2:17-mc-00016
                                   BELLATOR MOTION TO QUASH SUBPOENAS

*Monterey Bay Military Hous., LLC v. Pinnacle Monterey LLC*,
    2015 WL 2229229 (N.D. Cal. 2015) ............................................................. 11, 14

*Moon v. SCP Pool Corp.*,
    2005 WL 3526513 (C.D. Cal. Dec. 7, 2005).................................................... 16, 19

*Moussouris v. Microsoft Corp.*,
    2016 WL 5870010 (N.D. Cal. Oct. 7, 2016) ........................................................ 16

*Movie 1 & 2 v. United Artists Commn's, Inc.*,
    909 F.2d 1245 (9th Cir. 1990) ............................................................................... 19

*Mylan Pharm. Inc. v. Warner Chilcott Public Ltd. Co.*,
    838 F. 3d 421 (3d Cir. 2016) ................................................................................. 19

*Ploss v. Kraft Foods Grp.*,
    2016 WL 3476678 (N.D. Ill. June 27, 2016) ........................................................ 19

*R&D Business Sys. v. Xerox Corp.*,
    152 F.R.D. 195 (D. Colo. 1993) ............................................................................ 20

*Roberts v. Clark Cnty. Sch. Dist.*,
    2016 WL 1611587 (D. Nev. April 21, 2016) ........................................................ 23

*State Farm Mut. Auto. Ins. Co. v. Fayda*,
    2015 WL 7871037 (S.D.N.Y. Dec. 3, 2015)........................................................ 16

*In re Stewart Title Co.*,
    2009 WL 1708079 (S.D. Tex. June 17, 2009) ...................................................... 14

*Upjohn Co. v. Hygieia Biological Labs.*,
    151 F.R.D. 355 (E.D. Cal. 1993)..................................................................... 11, 13

**Statutes**

15 U.S.C. § 2...................................................................................................................... 18

**Rules**

Fed. R. Civ. Proc.
    26(b)............................................................................................................ 16, 17, 19
    45 .................................................................................................................*passim*

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Bellator Sport Worldwide, LLC ("Bellator"), a mixed martial arts ("MMA") promotion company, brings this motion to quash to protect itself from abusive document subpoenas that have been issued in connection with an antitrust action pending in the District of Nevada.

The Plaintiffs in the underlying action are a group of professional MMA athletes who have alleged violations of Section 2 of the Sherman Act against the world's largest MMA promotion company, defendant Zuffa LLC d/b/a the Ultimate Fighting Championship and the UFC ("UFC").  The gravamen of Plaintiffs' complaint is that UFC has abused its dominant market share to force exclusive dealing arrangements onto top-tier MMA athletes, event sponsors, physical venues, and distribution channels in order to lock rival MMA promotions out of the North American market for elite professional MMA competition.  UFC's market power and the lethal tactics it uses against its competitors are thus central to the underlying lawsuit; indeed, Plaintiffs specifically allege that Bellator is one of the prime targets of UFC's anticompetitive behavior.

Despite this threat to Bellator and with little regard to the requirement of Rule 45(d) to "take reasonable steps to avoid imposing an undue burden or expense" on non-parties, UFC and Plaintiffs alike issued expansive subpoenas to Bellator, seeking documents in dozens of categories that would force Bellator to disclose a wide array of its most sensitive and confidential commercial information to its largest competitor and to the athletes with whom it negotiates.  Although the scope of the subpoenas is overbroad, Bellator has submitted to a good faith meet-and-confer process, has agreed to produce much of what the parties have demanded, and has already produced thousands of pages of documents.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

300944.1

1

Case No. 2:17-mc-00016

BELLATOR MOTION TO QUASH SUBPOENAS

1   This Motion  focuses on just five document demands in two categories, which

2   comprise the most egregious and unjustified attempted invasion into Bellator's

3   sensitive and proprietary business information:

4   (1)  Bellator's confidential contracts and negotiations with MMA athletes

5         (Plaintiffs' Demand No. 4; UFC Demand No. 1); and

6   (2)  Bellator's detailed revenues and expenses from operations (Plaintiffs'

7         Demand No. 12; UFC Demand Nos. 7 and 12).

8   These five demands seek to force Bellator to produce its most sensitive information

9   to its single largest competitor—the company allegedly striving to squeeze it out of

10  the market—as well as to athletes who may negotiate with Bellator.  UFC could

11  easily use the information to put Bellator at an extreme competitive disadvantage,

12  for example, by undercutting Bellator's deals with critical venues, sponsors, and

13  distributors.  UFC and the athletes alike could use Bellator's inside information to

14  eviscerate any negotiation leverage Bellator may have, and requires, in this

15  competitive market.

16  Federal Rule of Civil Procedure 45(d)(3) recognizes prudential limits on the

17  disclosure of confidential commercial information and prevents the imposition of

18  undue burdens on non-parties to litigation.  The five aforementioned demands

19  present the epitome of an undue burden, and disclosure would cause great and

20  lasting competitive harm to Bellator.  Moreover, the litigants have not and cannot

21  meet their burden to prove a substantial need for Bellator's sensitive business

22  information, as Rule 45(d)(3) requires; and the litigants' stipulated protective order

23  does not provide remotely adequate protection against the disclosure of Bellator's

24  confidential information in the course of discovery and at trial in Nevada.

25  Bellator respectfully requests that this Court quash or modify the subpoenas

26  to protect Bellator from this unfair hardship.

27

28

**Kendall Brill & Kelly LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

300944.1                                    2                          Case No. 2:17-mc-00016
                          BELLATOR MOTION TO QUASH SUBPOENAS

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Background of Bellator

Bellator, founded in 2008, is an MMA promoter based in Los Angeles, California.  Its primary business is to contract with MMA athletes to participate in televised matches in venues around the world—events that Bellator organizes and promotes as both live arena entertainment for ticket purchasers and through worldwide distribution (e.g., free TV, pay TV, video-on-demand, and other platforms).  Declaration of Bellator President Scott Coker ("Coker Decl.") ¶ 2.

Although Bellator is less than a decade old, it has steadily grown its market, signing an enviable roster of new prospective athletes as well as well-known free agents from the United States and abroad, and today it is the second largest MMA promoter in the world after UFC.  *Id.* at ¶ 4.  Despite Bellator's success, UFC is a formidable competitor and is alleged to control some *ninety percent* of the revenues derived from elite professional MMA matches, with annual revenues exceeding $500 million.  *See* Complaint ("Cmplt") ¶ 7.  UFC competes with Bellator on all fronts, including building and retaining a roster of compelling athletes that draw generous viewership as well as top-tier sponsors, venues, distributors, and ultimately, an engaged fan-base.  Coker Decl. ¶ 4.

Other promotion companies in the MMA industry have not been so successful: in the past ten years, UFC has acquired, marginalized, or even forced out of business most of its former competitors.  *Id.* at ¶ 6.

### B.    Background to the Underlying Antitrust Litigation

Plaintiff athletes filed their underlying antitrust Complaint in the District of Nevada in December 2014.[1]  Plaintiffs allege that UFC has leveraged its overwhelming market dominance to prevent its competitors from accessing athletes,

---

[1] The Complaint is attached as Exhibit A to the Declaration of Philip M. Kelly ("Kelly Decl.").

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

300944.1                              3                          Case No. 2:17-mc-00016
BELLATOR MOTION TO QUASH SUBPOENAS

venues, sponsorships, and media outlets through exclusionary contracts and other tie-up arrangements. *See, e.g.*, Cmplt ¶¶ 9-11, 17-21, 67-75, 90-94, 107-150.

In particular, Plaintiffs allege that UFC prohibits athletes under contract with UFC from competing in other MMA promotions and from competing against non-UFC athletes, such as those who are under contract with Bellator. Cmplt ¶¶ 17, 90-94, 109-119. Plaintiffs allege that as a result, "Elite Professional MMA Fighters do not have the ability to turn to alternative MMA Promoters to earn competitive compensation in response to the UFC's artificial suppression of demand and compensation." Cmplt ¶ 91. Plaintiffs allege that UFC has even retaliated against UFC athletes who attempt to work with other promotions. Cmplt ¶ 116-119.

The Complaint includes numerous additional allegations that UFC has attempted to destroy rival promoters such as Bellator, through a variety of tactics, including deliberate counterprogramming of UFC events, driving up promotion costs, requiring exclusive arrangements with event sponsors, and restricting venues from leasing space to rival promoters by including "black out" periods before and after its events. Cmplt ¶¶ 107-108, 120-1150. Plaintiffs allege that "[t]he UFC has publicly touted its success in using the scheme…to squash its competition," and the Complaint cites three rival promotion companies that have already been "put out of business by UFC's anticompetitive conduct." Cmplt ¶¶ 128-134; *see also* ¶ 13. ("After reading off the names of the MMA Promotion companies that the UFC had eliminated through the conduct alleged herein, [UFC President] took credit for their demise, proclaiming, 'I'm the grim reaper, motherf***ers.'").

The Complaint contains disturbing allegations that UFC has its sights set squarely on Bellator, one of the last formidable alternative promotions, with such caustic tactics. For example, it is alleged:

> Bellator held a PPV [pay per view] event on September 5, 2014, at the Mohegan Sun in Uncasville, Connecticut. In response, as part of the exclusionary scheme alleged herein, the UFC held "UFC Fight Night

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

300944.1                          4                    Case No. 2:17-mc-00016
BELLATOR MOTION TO QUASH SUBPOENAS

50" at Foxwoods Resort Casino in Ledyard, Connecticut, on the same night, just ten miles away from Bellator's event.

Cmplt ¶ 150.  "UFC has thus used the same 'counter-programming' strategy [on Bellator] that it successfully used to force [other] actual or potential rivals…to stop promoting live professional MMA events."  *Id.*

Regardless of whether Plaintiffs ultimately prevail on claims that UFC has violated antitrust law, it is at minimum indisputable that UFC is Bellator's largest and most powerful rival, and that it is a company driven toward market domination. Cmplt ¶¶ 67-75; *see also* Coker Decl. ¶ 21.

### C.   Procedural History of the Bellator Subpoenas

The Parties to the underlying action in Nevada have each served a document subpoena on Bellator in California.  Kelly Decl. Exs. B & C.

Plaintiffs served their subpoena on Bellator on September 15, 2015.  The subpoena contains fifteen demands, seeking documents ranging from company information (e.g. Bellator's officers, directors, management, and ownership) to Bellator's internal strategic analysis regarding the MMA industry and competition with UFC.   Kelly Decl. Ex. B.  The Bellator Subpoena calls for document production in Los Angeles, California.

UFC served its subpoena on Bellator on September 29, 2015 ("UFC Subpoena").  *Id.* Ex. C.  The UFC Subpoena likewise contains fifteen document demands, seeking a similar broad range of documents.  Although the UFC Subpoena erroneously called for compliance in Oakland, California, the parties have agreed that the place of compliance is Los Angeles.

Bellator timely served objections and responses to both subpoenas. Following an extensive—and largely productive—meet and confer process with both Parties, Bellator agreed to produce documents responsive to the great majority of the demands.  Kelly Decl. ¶¶ 4-6; Exs. D & E.  However, with respect to a small handful of the demands that seek sensitive, highly confidential information of no

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

300944.1

5

Case No. 2:17-mc-00016

BELLATOR MOTION TO QUASH SUBPOENAS

1  relevance to the underlying action, Bellator has objected and declined to produce.

2  *Id.* Ex. D at pp. 4 11, 6-17; Ex. E at pp. 4-5, 14-15.

3    The document demands that Bellator cannot respond to, and that are the

4  subject of this Motion, fall into two categories: (1) demands for documents

5  pertaining to Bellator's athlete contracts; and (2) demands for documents pertaining

6  to Bellator's operating revenues and expenses.

7    The particular demands at issue in this Motion are set forth in full below:

8     **1.  Demands for Athlete Contracts and Negotiations**

9     <u>Plaintiffs' Demand No. 4</u>

10  All Agreements between Bellator and any Professional MMA Fighter, and
    any Documents and Communications relating to the negotiation, termination,
11  cancellation or transfer thereof.  Responsive Documents include, without
    limitation, executed Agreements, draft Agreements, side letters, all
12  negotiations between Bellator and any Professional MMA Fighters or their
    agents or representatives (regardless of whether such negotiations resulted in
13  an executed Agreement), and all Documents relating to the effects any such
    actual or potential Agreements between Bellator and any Professional MMA
14  Fighter had on Bellator's revenues, valuation, or ability to operate profitably
    as an MMA Promotion.
15    Kelly Decl. Ex. B, p. 12.

16     <u>UFC Demand No. 1</u>

17  All Agreements between Bellator and any Athletes relating to participation in
    a Combat Sport, including any Professional MMA Fighters, and any
18  Documents and Communications relating to the negotiation, termination,
    cancellation or transfer thereof. Responsive Documents include, without
19  limitation, executed Agreements, draft Agreements, side letters, all
    negotiations between Bellator and any Athlete, including any Professional
20  MMA Fighters, or their agents, managers, promoters, or other representatives
    (regardless of whether such negotiations resulted in an executed Agreement),
21  copies of any form agreements; and all Documents relating to the effects any
    such actual or potential Agreements between Bellator and any Athlete,
22  including any Professional MMA Fighter, had on Bellator's revenues,
    valuation, or ability to operate profitably as a Promoter.
23    Kelly Decl. Ex. C, p. 17.

24

25

26

27

28

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

300944.1          6         Case No. 2:17-mc-00016
       BELLATOR MOTION TO QUASH SUBPOENAS

### 2.     Demands for Cost and Revenue Information

Plaintiffs' Demand No. 12

Documents sufficient to show each Professional MMA Bout presented or promoted by Bellator, including the date, time, location, name of Venue, the Professional MMA Fighters involved, the purses paid to the fighters, all income Your Company received from presenting each Professional MMA Event (including gate receipts, advertising revenue, Broadcast revenue, merchandising revenue and sponsorship revenue), the costs of promoting each Professional MMA Event (including amounts paid for the Venue, MMA Promotional Materials, security and support staff, and licensing fees), and any profit (or loss) derived therefrom.
Kelly Decl. Ex. B, pp. 16-17.

UFC Demand No. 7

Documents sufficient to show each Professional MMA Bout presented or promoted by Bellator or planned to be presented or promoted by Bellator, regardless of whether the event actually took place, including the date, time, location, name of Venue, the Athletes involved, all compensation paid to the Athletes, all income or other consideration or other consideration Your Company received or projects to receive from presenting each Professional MMA Event (including actual or projected ticket prices and gate receipts, advertising revenue, Broadcast revenue, merchandising revenue and sponsorship revenue), the costs of promoting each Professional MMA Event (including but not limited to all amounts paid or projected to be paid for Athletes, the Venue, MMA Promotional Materials, audio-visual content production, security and support staff, and licensing fees), and any profit (or loss) derived or projected to be derived therefrom.
Kelly Decl. Ex. C, p. 19.

UFC Demand No. 12

Documents and data in as granular form as it is maintained sufficient to show all revenues, expenses, and other budget items relating to operating Your Company that are not included in Your response to Request No. 7 above.
Kelly Decl. Ex. C, pp. 20-21.

\* \* \* \* \* \* \*

In the course of the meet-and-confer process, Bellator proposed compromises with respect to these categories to allow discovery to proceed while protecting its most sensitive information.  For example, with respect to the demands for Bellator's athlete contracts, Bellator offered to provide anonymized exemplars for several different categories of athletes.  Kelly Decl. ¶ 7.  Although Plaintiffs indicated they might accept such a compromise, UFC flatly refused and insisted that Bellator produce *not only* all unredacted contracts but also the documents comprising the

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

300944.1

7

Case No. 2:17-mc-00016

BELLATOR MOTION TO QUASH SUBPOENAS

1   negotiation history for such contracts, which are subject to strict nondisclosure

2   obligations.[2]  *Id* at ¶ 8; Coker Decl. ¶¶ 10-13.

3        A similar impasse has been reached with respect to the demands for Bellator's

4   financial information.  After significant discussion, the Parties agreed that

5   unspecified "high level" information might suffice in lieu of Bellator's entire

6   accounts.  *Id.* at ¶ 9.  In further discussions, Plaintiffs and UFC elaborated that they

7   might accept quarterly financial reports setting forth Bellator's overall profits and

8   losses.  *Id.*  Bellator, which is a non-reporting subsidiary of Viacom International

9   Inc. does not disclose such financials.  Coker Decl. ¶ 18.  The "high level"

10  information that Bellator was and remains willing to provide consists of

11  consolidated summaries of particular categories of promotion expenses—all that is

12  even conceivably relevant to the underlying action—and Bellator should not be

13  required to produce to its competitor its profit and loss statements or the details of

14  its operating economics.

15       The meet-and-confer reached an impasse, and counsel for Bellator notified

16  the Parties' counsel that it would be bringing this motion.  Kelly Decl. ¶ 11.

17       **D.      Bellator's Internal Management of Sensitive Information**

18       Bellator's business rests in large part on its agreements with MMA athletes.

19  Coker Decl. ¶ 14.  The confidentiality of those contracts, and the negotiations

20  leading up to them, is essential to sustaining Bellator's bargaining leverage and

21  flexibility to retain the best athletes for its promotions.  *Id.*  Bellator's negotiations

22  with potential athletes are highly confidential, generally known to only a small

23  handful of people directly involved in the negotiations.  *Id* at ¶ 12.  Bellator's

24  contracts with athletes contain confidentiality provisions which prohibit both parties

25  _____

26       [2] The Parties agreed to accept exemplar contracts in other categories, such as
    in response to Plaintiffs' demand for all "agreements entered into by Bellator and
27  any broadcaster relating to the broadcast of professional MMA events…."  Kelly
    Decl. ¶ 8; *id.* Ex. B (Plaintiffs' Demand No. 6).
28

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

300944.1                          8                    Case No. 2:17-mc-00016
                    BELLATOR MOTION TO QUASH SUBPOENAS

from revealing information regarding the terms of the contracts, and unlike some other professional sports, the terms of athlete deals are not publically known in the MMA industry.  *Id* at ¶ 12.

At Bellator's offices, the circle of personnel involved in athlete negotiations is small.  *Id.* at ¶ 11.  Typically only two or three executives, including the President, know the substance of negotiations, *id.* at ¶ 12; as for executed agreements, only those persons who require the information to do their jobs have access to the agreements or the key information therein.  *Id.* at  ¶ 11.  That limited group has access to that information through paper and computer files that are secured from other employees at Bellator.  *Id.*  Bellator maintains such restrictions because broader access could lead to inadvertent leaks that would negatively impact its ability to sign athletes and compete in the industry.  *Id.* at ¶ 14.  It would be particularly injurious if Bellator's negotiating and contracting practices become known to either athletes or rival MMA promotors.  *Id.*  Such information would allow athletes to generate an unbalanced negotiating strategy and would allow competitors to anticipate and outflank Bellator's recruitment strategies without a concomitant disclosure of their own tactics.  *Id.* at ¶ 15.  Bellator's deals with individual athletes typically turn on a number factors not limited to recent match performance and will involve Bellator strategy to target geographic areas, build out markets, or diversify the roster.  *Id.*  Unilaterally armed with Bellator's information, a dominant player such as UFC could allocate its resources to one-up Bellator on critical signings to head off Bellator's initiatives or target its weaknesses.  *Id.*

Likewise, Bellator's income and loss data—particularly at the comprehensive level demanded by the Parties—go to the very heart of Bellator's ability to operate in a highly competitive marketplace.  Bellator Decl. ¶ 20.  Bellator does not publicly report its financial information in either high level or detailed form.  *Id.* at ¶ 18.  Nor does it disclose such information broadly within Bellator itself.  *Id.* at ¶ 19.  Instead, as with the contract information, Bellator's income and expense reports are

accessible only to those persons who require the information for their jobs.  *Id.*
These persons access the information with the understanding that it is confidential.
*Id.*  Bellator handles this information carefully because a competitor armed with
proprietary information as to how Bellator spends, earns, allocates funding,
determines investment, and calculates profits and losses, could readily undermine
Bellator's operations and strategic initiatives.  *Id.* at ¶ 20.  Indeed, if UFC's business
practices are as caustic as Plaintiffs allege, Bellator's income and expense
information would provide a roadmap to its destruction.  *Id.* ¶¶ 20-21.

## III.   JURISDICTION

Pursuant to Federal Rule of Civil Procedure 45(d)(3), non-parties to a
litigation may seek protection from an abusive subpoena from the Court in the
District where compliance is required.  Fed. R. Civ. Proc. 45(d)(3).

Plaintiffs' Subpoena specifies compliance in Los Angeles; as such, the
Central District of California has jurisdiction to hear Bellator's Motion.  *Id.*

UFC's Subpoena erroneously specified compliance in Oakland, California,
some 380 miles away from Bellator.  Because this would have voided the
subpoena,[3] counsel for UFC agreed that compliance will be in the Central District
and has consented to this Motion being heard in that district, which will also serve
judicial economy.  Kelly Decl. ¶ 4.

## IV.   ARGUMENT

Bellator brings this motion to quash pursuant to Federal Rule of Civil
Procedure 45(d), which sets forth procedures to protect a non-party witness from
subpoenas that are unduly burdensome and that seek to compel the disclosure of
confidential commercial information.  *See Exxon Shipping Co. v. U.S. Dep't of*

---

[3] Rule 45(c)(2) requires that compliance be set within 100 miles of the
witnesses' regular residence.  As Bellator does not have offices or regularly transact
business near Oakland, a subpoena requiring compliance in Oakland is facially void.
*Mattel Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 813 (9th Cir. 2003).

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

300944.1                                    10                          Case No. 2:17-mc-00016
BELLATOR MOTION TO QUASH SUBPOENAS

1  *Interior*, 34 F.3d 774, 779 (9th Cir. 1994) (Rule 45 "afford[s] nonparties special

2  protection against the time and expense of complying with subpoenas"); *Mattel Inc.*

3  *v. Walking Mountain Prods.,* 353 F.3d 792, 814 (9th Cir. 2003) (Rule 45 "intended

4  to provide 'appropriate protection for the intellectual property of [a] non-party

5  witness.'") (citations omitted); *Dart Indus. Co. v. Westwood Chem. Co*., 649 F.2d

6  646, 649 (9th Cir. 1980) ("The word 'non-party' serves as a constant reminder of the

7  reasons for the limitations that characterize 'third-party' discovery.") (internal

8  quotations omitted).

9  **A.    The Subpoena Demands Should Be Quashed Because They Seek**
10  **Confidential Commercial Information Without Substantial Need**

11  Rule 45 authorizes the Court to quash or modify a subpoena that requires

12  "disclosing a trade secret or other confidential research, development, or

13  commercial information," Fed. R. Civ. Proc. 45(d)(3)(B), absent a showing of

14  "substantial need" for the information.  *Monterey Bay Military Hous., LLC v.*

15  *Pinnacle Monterey LLC*, 2015 WL 2229229 * 3 (N.D. Cal. 2015).  In this case—

16  wherein Bellator's biggest competitor (which, as alleged, is trying to destroy

17  Bellator) and MMA athletes who may negotiate with Bellator seek Bellator's

18  extremely sensitive confidential commercial information absent any genuine

19  discovery need—the Court is within its discretion to quash the demands.

20  **1.    Contract Negotiations and Operating Financials Constitute**
**Bellator's Confidential Commercial Information**

21  As contemplated by Rule 45(d)(3)(B)'s protective safeguards, "[c]onfidential

22  commercial information…is important proprietary information that provides the

23  business entity with a financial or competitive advantage when it is kept secret, and

24  results in financial or competitive harm when it is released to the public."  *In re: Am.*

25  *Med. Sys., Inc*., 2016 WL 3077904, at *3 (S.D. W.Va. May 31, 2016) (modifying

26  subpoena and permitting redaction of trade secret information).

27

28

**Kendall Brill
& Kelly LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

300944.1

11

BELLATOR MOTION TO QUASH SUBPOENAS

Case No. 2:17-mc-00016

In determining whether information falls within the protections of Rule 45(d)(3)(B), courts first consider the potential harm that could arise if such information were publicly released.  *See DIRECTV, Inc. v. Trone,* 209 F.R.D. 455, 459-60 (C.D. Cal. 2002) (denying motion to compel where plaintiff showed by declaration that disclosure of information would leave it vulnerable to piracy); *Upjohn Co. v. Hygieia Biological Labs.*, 151 F.R.D. 355, 358 (E.D. Cal. 1993) (modifying subpoena to avoid harm by disclosure of trade secrets; explaining that defendants maintained information in secret "in order to limit their market competition and thereby avoid irreparable harm").  Where a competitor is involved, courts presume that disclosure will be more harmful than if to a non-competitor. *Echostar Commn's Corp. v. News Corp. Ltd.*, 180 F.R.D. 391, 395 (D. Colo. 1998).

Next, courts evaluate the non-disclosing party's showing that it has tried to maintain the confidentiality of the information at issue, with consideration as to where the information is kept, who has access to the information and under what circumstances, and any notice of confidentiality on the documents themselves.  *See Mgmt. and Eng'g Tech. Intern., Inc. v. Info. Sys. Support, Inc.*, 490 Fed. Appx. 30, 32 (9th Cir. 2012) (company "carefully guarded" business information by keeping printed versions in a vault, password protecting electronic files, limiting access to those persons with signed NDAs, and labeling the documents as confidential); *see also Trone,* 209 F.R.D. at 459-60.

Using these tests, courts have limited discovery of a company's non-public financial information, including its profit margin and expenses.  *SeeEng'g Tech.*, 490 Fed. Appx. at 32.  Similarly, "pricing and marketing information are widely held to be confidential business information." *Am. Med.*, 2016 WL 3077904 *3. Additionally, "customer lists, vendor lists, and sales and revenue information qualify as confidential commercial information."  *Edwards v. Cal. Dairies, Inc.*, 2014 WL 2465934, at *4 (E.D. Cal. June 2, 2014).

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

300944.1

12

Case No. 2:17-mc-00016

BELLATOR MOTION TO QUASH SUBPOENAS

In the present case, the documents sought by Plaintiffs and UFC clearly meet these tests for confidential commercial information.  Bellator's athlete contracts, its confidential negotiations, and "all Documents relating to the effects any such actual or potential Agreements…had on Bellator's revenues, valuation, or ability to operate profitably as a Promoter," *see, e.g.,* Plaintiffs' Demand No. 4, constitute proprietary information, the confidentiality of which is critical to Bellator's ability to maintain its bargaining power and retain the best athletes and other inputs to its MMA events. *Supra* part II.D; Coker Decl. ¶¶14-16.

Bellator's operating financials, including "all income or other consideration [Bellator] received or projects to receive from each [event], the costs of promoting each [event], and any profit (or loss) derived or projected to be derived therefrom," as well as "granular" data showing Bellator's detailed operating margins, *see* UFC Demand No. 7, would reveal how Bellator spends, earns, allocates funding, and determines profits and losses—as well as even Bellator's *projections* for future allocations—goes to the very heart of its business operations and strategy.  *Supra* part II.D.

Where, as here, Bellator is asked to reveal sensitive confidential information to its biggest direct competitor, there is a presumption of harm.  *See Echostar*, 180 F.R.D. at 395.  And indeed that presumption is warranted here:  Bellator's ability to compete, negotiate and sustain operations would be irreparably damaged if it were required to produce either the contracts and negotiations or its operating income and expense information.  *Hygieia*, 151 F.R.D. at 358; Coker Decl. ¶ 20.

Moreover, as in *Engineering Technologies* and *Trone*, Bellator undertakes extensive efforts to maintain the confidentiality of such information.  Bellator and the athletes with whom it negotiates are bound through mutual confidentiality provisions.  Coker Decl. ¶¶ 12-13; *supra* part II.D.  Bellator's financial information is not publicly reported in either high level or granular form.  *Id.* ¶ 18.  Within Bellator, access to both the contract and financial documents demanded is highly

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

300944.1

13

Case No. 2:17-mc-00016

BELLATOR MOTION TO QUASH SUBPOENAS

1  restricted.  *Id.* at ¶ 19.  Personnel who necessarily have access to any of this

2  information to carry out their jobs, are advised of its confidentiality.  *Id.* at ¶ 19.

3      Confidential, sensitive, and treated as such, Bellator's contracts, contract

4  negotiation, and income and expense information fall well within the recognized

5  contours of confidential commercial information under Rule 45(d)(3)(B).

6        **2.**    **Plaintiffs And UFC Cannot Demonstrate A Substantial Need**

            **For Bellator's Contract Negotiations and Operating**

7              **Financials**

8      Where a non-party witness has demonstrated that a subpoena seeks sensitive

9  confidential business information, the demanding party "must demonstrate a

10  substantial need for the documents that cannot otherwise be met without undue

11  hardship."  *Monterey Bay*, 2015 WL 2229229 at *3 (denying motion to compel

12  because the subpoena sought irrelevant and confidential information and the party

13  seeking discovery was unable to demonstrate a substantial need); *Echostar*., 180

14  F.R.D. at 394 (denying motion to compel where non-parties established documents

15  were trade secrets and party seeking documents could only show marginal

16  relevance).

17      "Establishing substantial need requires a showing that the requested discovery

18  is relevant and essential to a judicial determination of [the party's] case.  A party

19  seeking confidential information must establish that it is reasonably necessary for a

20  fair opportunity to develop and prepare the case for trial."  *Aevoe Corp. v. AE Tech*

21  *Co*., 2013 WL 5954570, at *3 (D. Nev. Nov. 6, 2013) (internal quotation marks and

22  citations omitted) (granting motion to quash for failure to establish that documents

23  sought were necessary to the resolution of the matter); *see also Gonzales v. Google,*

24  *Inc.,* 234 F.R.D. 674, 684 (N.D. Cal. 2006) (denying motion to compel compiled

25  search records for which the Government could not show substantial need).

26      To establish "undue hardship," a party must show that its substantial need

27  cannot be met using other means.  *See In re Stewart Title Co.*, 2009 WL 1708079 *2

28  (S.D. Tex. June 17, 2009) (granting motion to quash and explaining that defendant

**Kendall Brill
& Kelly LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

300944.1

14

Case No. 2:17-mc-00016

BELLATOR MOTION TO QUASH SUBPOENAS

1  could refute the expert's report using other means); *Fanjoy v. Calico Brands, Inc.*,

2  2006 WL 2303115 *4 (D. Utah August 8, 2006) (no undue hardship where plaintiffs

3  could obtain information necessary to their case without the challenged documents).

4       The Parties cannot meet their burden to demonstrate that they have a

5  substantial need for Bellator's confidential commercial information.  To begin with,

6  the demanded documents have marginal relevance, if any, to the underlying antitrust

7  action, as detailed on page 16 *infra*.  Plaintiffs' allegations center on UFC's business

8  practices; in particular, UFC's allegedly exclusionary contract and booking

9  practices.  Thus, for example, the litigants do not have any need, let alone

10  substantial need, for each and every of Bellator's individual athlete contracts, with

11  identifying information, to probe UFC's business dealings with MMA athletes.  The

12  anonymized contract exemplars Bellator has offered would be sufficient to

13  demonstrate whether UFC's athlete engagements are anomalous or harmful; this is

14  particularly true where UFC and Bellator do not presently have any athletes in

15  common.

16       Nor do the litigants require Bellator's exhaustive income and expense

17  information for all its matches to probe whether UFC's practices are

18  anticompetitive.  Bellator has agreed to provide information more than sufficient to

19  probe whether UFC locks up venues and manipulates prices to squeeze out

20  competitors: the dates, locations, venues, athletes, and purses paid for Bellator's

21  matches.  Kelly Decl. ¶ 7.  Certainly, Bellator's complete P&L and financial

22  statements and its forward projections for payments to athletes, venues, promotions,

23  content production, security and staff—all of which UFC demands (Demand No. 7)

24  —do not conceivably bear on *any* litigated issue, and the discovery appears intended

25  only for market intelligence.

26       Thus to the extent the demands are relevant at all, the sought after contract

27  and financial documents are not "essential" to the determination of the case.

28  Because the Parties have no substantial need, and the test is conjunctive, the Court

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

300944.1

15

Case No. 2:17-mc-00016

BELLATOR MOTION TO QUASH SUBPOENAS

1  need not reach the question of undue hardship.  But, if it does, it is clear that the

2  Parties will not suffer undue hardship should Bellator's motion be granted, as they

3  have access to innumerable other documents to support their arguments.

4  Conversely, the discovery would cause grievous competitive harm to Bellator, and

5  for this reason is not permissible under Rule 45(d)(3)(B).

### B.  <u>The Subpoenas Must Be Quashed Or Limited Because They Are Overbroad And Unduly Burdensome</u>

8  Rule 45 provides that the Court "***must*** quash or modify a subpoena

9  that…subjects a person to undue burden."  Fed. R. Civ. Proc. 45(d)(3)(A)(iv)

10  (emphasis added); *Mattel Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 813 (9th

11  Cir. 2003) (affirming quash of subpoena where demands were significantly broader

12  than the alleged basis for their relevance).

### 1.  The Demands Seek Irrelevant Information and Subject Bellator to Undue Burden

14  The burden imposed on a third party by a subpoena is undue "by definition"

15  "if the sought-after documents are not relevant, nor calculated to lead to the

16  discovery of admissible evidence." *Compaq Computer Corp. v. Packard Bell Elec.,*

17  *Inc.*, 163 F.R.D. 329, 335-36 (N.D. Cal. 1995).  Thus, in considering a motion to

18  quash under Rule 45(d)(3)(A), the court must consider the relevance of the

19  demanded information to the claim or defenses in the underlying action.  *Moon v.*

20  *SCP Pool Corp.*, 2005 WL 3526513, at *4 (C.D. Cal. Dec. 7, 2005) ("Although

21  irrelevance is not among the litany of enumerated reasons for quashing a subpoena

22  found in Rule 45, courts have incorporated relevance as a factor when determining

23  motions to quash a subpoena"); *see DIRECTV Inc. v. Trone*, 209 F.R.D. 455, 460

24  (C.D. Cal. 2002).

25  "The scope of discovery a party may obtain through a subpoena is the same as

26  that applicable under Federal Rule of Civil Procedure 26(b)." *Moussouris v.*

27  *Microsoft Corp.*, 2016 WL 5870010, at *4 (N.D. Cal. Oct. 7, 2016) (granting motion

28

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

to quash where demands did not meet Rule 26 relevance standard); *see also* Fed. R. Civ. Proc. 45 Adv. Comm. Note (1970).  Thus, a party may only subpoena information that is not privileged and is "relevant to any party's claim or defense ***and proportional to the needs of the case***."  Fed. R. Civ. Proc. 26(b)(1) (emphasis added).  Information is relevant for the purpose of discovery if it bears on, or reasonably could lead to information that could bear on a party's claim or defense. *State Farm Mut. Auto. Ins. Co. v. Fayda,* 2015 WL 7871037, at *2 (S.D.N.Y. Dec. 3, 2015).  Rule 26, as amended in 2015, embodies a proportionality requirement that "'encourage[s] judges to be more aggressive in identifying and discouraging discovery overuse' by emphasizing the need to analyze proportionality before ordering production of relevant information."  *Id.* (*quoting* Fed. R. Civ. Proc. 26(b)(1) Adv. Comm. Note (2015)).

UFC and the Plaintiffs have the burden of establishing the relevance of the confidential information they demand.  *Echostar*, 180 F.R.D. at 394.  That is, they must show that the documents sought bear on or are likely to lead to information bearing on whether UFC possesses monopoly power, or that it willfully acquired or maintains such power.  They cannot do so here.  Bellator has already offered to produce responsive and relevant documents, and the Parties now seek only irrelevant documents.

With respect to Plaintiff's Demand No. 4 and UFC's Demand No. 1, which seek Bellator's athlete contracts and related negotiation documents, the demands seek much more than is relevant to the claims and defenses in the litigation. Bellator has already offered to provide the Parties with all plausibly relevant information, for example, to provide documents sufficient to identify all those MMA athletes who have contracts with Bellator.  Kelly Decl. Ex. 7.  Thus, for example, to the extent UFC seeks to show functioning competition in the market to recruit MMA athletes, UFC does not need full discovery of Bellator's specific deal points to do so and can further develop its defense based on its own negotiations

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

300944.1

17

Case No. 2:17-mc-00016

BELLATOR MOTION TO QUASH SUBPOENAS

with athletes.  Moreover, to the extent the Parties profess a need for additional information about Bellator's athlete deals, Bellator has offered to provide exemplars of each type of its athlete contracts (for example, elite v. non-elite categories) with names and monetary terms redacted.[4]  Kelly Decl. ¶ 7.

Neither Party has offered any reasonable explanation why it needs to know the names and amounts paid to each athlete, which would not be probative of any issue in the case.  Nor have the Parties offered any explanation of why the negotiation history documents are relevant.  The specific terms of Bellator's offers, negotiations, and unredacted contracts do not provide the Parties with any needed information.   Their discovery needs will be fully accommodated by what Bellator has already agreed to provide, as well as Party-controlled and public information.

The financial demands are similarly overreaching.  Plaintiffs' Demand No. 12 and UFC's Demand No. 7 seek highly detailed information about the matches promoted by Bellator.  To the extent that Bellator's matches are conceivably relevant to the claims in the litigation, Bellator has agreed to provide all potentially relevant information including the date, time, location, venue, and athletes for each match.  *See* Kelly Decl. Exs. B, p. 16; (Plaintiff Demand No. 12) & Ex. C, p. 19 (UFC Demand No. 7).  Compliance on those terms would fully address the Parties' purported need for information regarding Bellator's market engagement, business practices and performance.[5]  The balance of the demands, seeking Bellator's income and expenses at an event level, do not bear on whether UFC deliberately engages in

---

[4] As noted above, Plaintiffs initially *agreed* to this compromise (likely because such documents would be sufficient).  *See supra* part II.C.  The Parties cannot provide any reason that such compromise is insufficient to meet their needs.

[5] Bellator's business performance can also be demonstrated by publicly available information such as its announced sponsorships, signing of athletes, publicized bouts, as well as those prize purses subject to disclosure under many state's athletic commission regulations.  Coker Decl. ¶ 10.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

300944.1

18

Case No. 2:17-mc-00016

BELLATOR MOTION TO QUASH SUBPOENAS

1  anticompetitive behavior to eliminate competitors, such as by usurping or

2  sabotaging venue and partnership relationships.  *See* Compl. ¶¶ 120-127.

3      UFC has gone a step further and demanded Bellator's "granular" financial

4  data showing "*all* revenues, expenses, and other budget items relating to operating

5  [Bellator]…."  Kelly Decl. Ex. C, pp. 20-21 (UFC Demand No. 12) (emphasis

6  added).  This demand is patently overbroad.  Bellator's operating budget (like any

7  other company's) reflects a myriad of business decisions, strategies, and situational

8  factors, and the intricate "granular" data comprising the budget do not individually

9  reflect those factors.  Moreover, Bellator's business performance and margins are

10 not an element of Plaintiff's Sherman Act claim.  *See* 15 U.S.C. § 2.  It is not

11 probative of whether UFC possesses monopoly power, which can be demonstrated

12 by, among other things, UFC's ability to set supracompetitive prices, nor probative

13 of UFC's market share—both of which can be demonstrated through UFC's

14 documents and expert analysis.  *See e.g. Mylan Pharm. Inc. v. Warner Chilcott*

15 *Public Ltd. Co.*, 838 F. 3d 421, 434-37 (3d Cir. 2016) (court first looks at whether

16 plaintiff has provided "rare" direct evidence of defendant's supracompetitive

17 pricing, and if that is unavailable, at defendant's share of market), *see also Ploss v.*

18 *Kraft Foods Grp.*, 2016 WL 3476678 *21-23 (N.D. Ill. June 27, 2016).

19     Nor is the demanded information probative of whether UFC willfully

20 acquired or maintained its monopoly power, which is demonstrated by UFC's own

21 conduct such as its alleged methodical buying and putting out of business of

22 competitors.  *See Ploss*, 2016 WL 3476678 * 23 (willful acquisition requires intent

23 of the defendant, and can be shown by, *inter alia*, its refusal to deal with

24 competitors); *Movie 1 & 2 v. United Artists Comm'n's, Inc.*, 909 F.2d 1245, 1255

25 (9th Cir. 1990) (jury may infer willful acquisition or maintenance of monopoly

26 power from market share, or from "the fact that [defendant] acquired its prior

27 competitor [], thus eliminating its only serious competition in the market").

28 Bellator's line-by-line operating budget does not bear on any claim or defense.

**Kendall Brill & Kelly LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

300944.1

19

Case No. 2:17-mc-00016

BELLATOR MOTION TO QUASH SUBPOENAS

The Parties' overreaching demands do not begin to meet the Rule 26 and 45 relevance standards.  They are fishing expeditions that totally disregard the undue burden and potential harm to a non-party.  *Moon*, 232 F.R.D. at 637.

### 2. Even if the Information Sought Were Relevant, the Demands Impose an Undue Burden and Should Be Quashed

"[A] court may modify or quash a subpoena *even for relevant information* if it finds that there is an undue burden on the non-party."  *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 683 (N.D. Cal. 2006) (emphasis added).  In *Gonzales*, the court found that a subpoena seeking Google user's search queries imposed an undue burden on Google where its users had an expectation of privacy that such search results would not be disclosed and thus disclosure would negatively impact Google. *Id.*  Those same concerns are even more present here, where Bellator's nondisclosure obligations are, among other things, contractually mandated. Bellator's partners, whose confidential deal terms and other information are sought by the Parties' financial demands, include athletes, venues, sponsors and others. Bellator's non-disclosure obligations frequently include requirements for finding and notifying counterparties when documents may be disclosed in legal proceedings.  Requiring Bellator to determine all of its nondisclosure commitments across "all" its business relationship, and in many cases to reach out to counterparties, would be extraordinarily burdensome.  Thus, even if this Court finds that the demands seek relevant documents (which it should not), the Court should under Rule 45(d)(3)(A) at least mitigate the undue burden on Bellator by modifying these demands.

### C. The Parties' Stipulated Protective Order Will Not Protect Bellator From Hardship And Undue Burden

Rather than reconsider or modify any of its overbroad and intrusive demands, UFC and Plaintiffs argued during meet-and-confer that Bellator can protect itself from disclosure of its proprietary information by designating documents as "Confidential" or "Highly Confidential-Attorney's Eyes Only" under the litigants'

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

300944.1

20

Case No. 2:17-mc-00016

BELLATOR MOTION TO QUASH SUBPOENAS

stipulated protective order.[6]  Not so.  While the protective order is certainly a starting point before Bellator should have to respond to the subpoena, it will not adequately protect Bellator.

First, the existence of a protective order does not overcome the subpoenaing party's burden to demonstrate substantial need for sensitive information under Rule 45(d)(3)(B).  *R&D Business Sys. v. Xerox Corp.*, 152 F.R.D. 195, 198 (D. Colo. 1993) (granting motion to quash discovery of trade secret information despite presence of protective order because party seeking discovery could not show necessity).  Nor can even a "fairly restrictive" protective order avoid the bounds set on permissible discovery by the relevance requirement.  *See e.g. Echostar*, 180 F.R.D. at 396 ("The protective order does not negate the fact that the information which is sought…is only marginally relevant….").

Moreover, the Parties' stipulated protective order does not adequately safeguard Bellator's proprietary information, and compliance with the protective order itself imposes a heavy and ongoing burden on Bellator to try to maintain confidential treatment of its information in out-of-state proceedings with other prerogatives than Bellator's business.  This Court must protect Bellator from improper intrusions and undue hardships in those foreign proceedings.

### 1.     Bellator Lacks Adequate Notice and Opportunity to Prevent Disclosure in Pre-Trial Litigation

The Parties' stipulated protective order provides that the Parties are free to file Bellator's confidential documents and information with the Nevada court so long as they *provisionally* lodge such materials under seal.  Once so designated, the burden then shifts to Bellator to file a motion to seal within five business days of the provisional filing and "set forth the bases for the Court to seal the document or information permanently."  Kelly Dec. Ex. F at ¶ 14.3.

---

[6] The Parties' revised stipulated protective order was entered by the Nevada court on February 10, 2016.  Kelly Decl. Ex. F.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

This process is inadequate, unfair, and circumvents this Court's authority to limit disclosure under Rule 45(d)(3)(B).  First, the process assumes that Bellator will be in a position to designate confidential information in the first instance.  For example, although Bellator can (and will) designate its documents prior to producing them, should the Parties disclose information in Bellator's documents during depositions, such testimony would also need to be designated.  The protective order stipulates that a designating party has 21 days to do so.  Kelly Dec. Ex. F at ¶ 5.2(b).  While this might be practicable for the Parties, there is no mechanism by which Bellator would be guaranteed notice that its confidential information was used during deposition.  Even if the Parties agreed to a further mechanism to notify Bellator, the burden would still be on Bellator not only to review the transcripts throughout the protracted litigation, but also to bring serial motions to seal in the Nevada court for any filings that incorporate either the documents or revealing testimony.

Further, additional non-parties—including the MMA athletes who have confidentiality clauses in their contracts with Bellator—have interests at stake too. With Bellator receiving only a few days' notice of potential disclosure of the subpoena information, it is even more doubtful that the additional non-parties will be afforded anything approaching sufficient notice and opportunity to protect their interests.  Moreover, in many instances Bellator has obligations to these other parties with respect to confidential treatment of their information, and meeting these obligations will subject Bellator to additional and ongoing economic and logistic hardship and potential exposure.  The non-parties, many of whom are individuals, would also be subjected to hardship as they try to find Nevada counsel and file a motion to seal within a few days.

Even if Bellator or additional non-parties did bring a motion to seal, they can have no faith their information would remain sealed.  The Nevada District Court has made clear that motions to seal are generally disfavored.  *See e.g. Aevoe Corp. v. AE*

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

300944.1

22

Case No. 2:17-mc-00016

BELLATOR MOTION TO QUASH SUBPOENAS

*Tech. Co.*, 2014 WL 551563 *1 (D. Nev. February 7, 2014) ("[t]he Ninth Circuit has held that there is a strong presumption of public access to judicial records," and denying motions to seal).  Once its most sensitive documents are in the hands of the litigants, Bellator can have no reasonable confidence that the court in Nevada would seal the documents, and no advocates for its commercial interests in that foreign lawsuit.

### 2.      Bellator Lacks Protection Against Disclosure of Its Confidential Information at Trial in Nevada

The Parties' stipulated protective order only addresses the treatment of documents in pre-trial litigation.  Kelly Decl. Ex. F at ¶ 13.  There are currently no procedures in place to protect Bellator's confidential information at trial.  Kelly Decl. ¶ 10.  Neither Party has committed to creating such  procedures and neither has an incentive to do so.  *Id.*

Nevada district courts have repeatedly affirmed that "there is a strong presumption of access to judicial records" once documents are used in "the resolution of a dispute on the merits," such as in a trial.  *Roberts v. Clark Cnty. Sch. Dist.*, 2016 WL 1611587 *1 (D. Nev. April 21, 2016) (denying motion to seal).  Thus, even if the Parties were to reach agreement on the handling of confidential documents at trial, Bellator cannot be confident that its materials would remain confidential.  Moreover, in this major multiparty litigation, the Nevada court may not devote attention to the concerns of an out-of-state non-party business, and, at a minimum, Bellator would need to retain counsel to monitor the entire Nevada trial to be in a position to try to safeguard its confidential information.

### 3.      The Parties Have Demonstrated an Inability to Properly Maintain Confidentiality Documents

Reliance on the provisions of the protective order requires Bellator to depend on the Parties to maintain the confidentiality of its documents.  But such reliance is unwarranted here, where in the face of aggressive reporting by the MMA press, both Parties have already shown that they cannot reliably maintain documents and

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1   information protected from disclosure.  *See* Kelly Decl. Ex. H (news article

2   regarding UFC's production of attorney/client privileged documents due to faulty

3   record keeping regarding privileged documents); *id.* Ex. I (news article regarding

4   Plaintiffs' failure to properly redact content UFC claimed was work-product

5   protected from their motion challenging such protection); *see also* Exhibit G (article

6   regarding Parties' own dispute over the adequacy of Highly Confidential outside

7   attorney designation in close-knit MMA industry).

8   **V.    CONCLUSION**

9        The only way to protect Bellator's highly confidential commercial

10  information is to limit disclosure in the first instance as the Federal Rules

11  contemplate.  For the foregoing reasons, Bellator respectfully asks that this Court

12  quash the subpoenas or modify them to limit the information demanded to only non-

13  confidential information.

14

15  DATED:  February 22, 2017          KENDALL BRILL & KELLY LLP

16

17

18                        By: _____

19                            Philip M. Kelly
                              Attorneys for Non-Party
20                            Bellator Sport Worldwide, LLC

21

22

23

24

25

26

27

28

**Kendall Brill
& Kelly LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

300944.1                          24                    Case No. 2:17-mc-00016
                        BELLATOR MOTION TO QUASH SUBPOENAS